UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

KANAY MUBITA,

                 Petitioner,

    v.

WARDEN TIM WENGLER,

                 Respondent.

Case No. 1:08-cv-00310-BLW

**MEMORANDUM DECISION AND ORDER**

      This habeas corpus matter was stayed pending completion of Petitioner's state court appeal challenging the same conviction and sentence. (Dkt. 17.) After the state court action concluded, this case was re-opened. (Dkt. 20.) Respondent filed a Motion for Partial Summary Dismissal, which is now ripe for adjudication, with the parties having filed a Response, Reply, and Sur-Reply. (Dkt. 29, 32, 37, 38.)

      Having reviewed the record, including the state court record, and having considered the arguments of the parties, the Court finds that oral argument is unnecessary. Accordingly, the Court enters the following Order.

**MEMORANDUM DECISION AND ORDER - 1**

## MOTION FOR PARTIAL SUMMARY DISMISSAL

The pro se Petition for Writ of Habeas Corpus filed in this action contains seven substantive claims, though they are numbered one through three with one "new claim." (Dkt. 3, pp. 2-6.) For ease of reference, the claims will be addressed in this Order as Claims One through Seven. Respondent argues that Claims One, Two, Three, Four, and Seven should be dismissed with prejudice on procedural grounds, leaving only Claims Five (erroneous jury instruction) and Six (confrontation of lab technicians) for adjudication on the merits. The Court will review each of the claims for which Respondent seeks dismissal.

**1.       Standard of Law Governing Summary Dismissal**

Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." In such case, the Court construes the facts in a light most favorable to the petitioner. It is appropriate for the Court to take judicial notice of court dockets from state court proceedings. Fed. R. Evid. 201(b); *Dawson v Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

**2.       Claim One**

Petitioner was charged with and convicted by jury of eleven felony counts of transfer of bodily fluid which may contain the human immunodeficiency virus (HIV), in violation of Idaho Code § 39-608. Claim One is that Petitioner was denied his Fourth

**MEMORANDUM DECISION AND ORDER - 2**

Amendment rights when the State obtained his medical records from the Idaho

Department of Health without a court order or his consent and used them as evidence at

trial that he knew he was HIV-positive when he had sexual relations with the victims.

Petitioner asserts that the medical records were private and not public records. (Dkt. 3,

p.1.)

> **A.     *Standard of Law***

The threshold issue in a Fourth Amendment claim presented in a federal habeas

corpus petition is whether the state provided the petitioner an opportunity for full and fair

litigation of his claim in state court. *Stone v. Powell*, 428 U.S. 465, 494 (1976). If the

federal district court determines that full and fair litigation of the claim took place in state

court, then it cannot grant habeas corpus relief on the ground that the evidence was

obtained in violation of the Fourth Amendment. *Id*.

A federal district court must first "inquire into the adequacy and fairness of

available state court procedures for the adjudication of Fourth Amendment claims."

*Sanna v. Dipaolo*, 265 F.3d 1, 8-9 (1st Cir. 2001) (internal citation omitted). If the court

determines that the state court procedures are adequate, the inquiry generally ends there.

*Id*. That is, "[s]o long as a state prisoner has had an opportunity to litigate his Fourth

Amendment claims by means of such a set of procedures, a federal habeas court lacks the

authority, under *Stone*, to second-guess the accuracy of the state court's resolution of

those claims." *Id*. at 9. Stated another way, "[t]he relevant inquiry is whether petitioner

had the opportunity to litigate his claim, not whether he did in fact do so or even whether

**MEMORANDUM DECISION AND ORDER - 3**

the claim was correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996). Petitioner bears the burden of establishing that the state courts did not consider the Fourth Amendment claim fully and fairly. *Mack v. Cupp*, 564 F.2d 898, 901 (9th Cir. 1977).

      **B.**     ***State Court Litigation***

      Petitioner filed a motion to suppress evidence before trial, asserting that his Fourth Amendment rights were violated and that prosecutors should not be able to use the following evidence at trial: (1) health and other records of Petitioner obtained from the Idaho Department of Health without Petitioner's permission; (2) statements made by Petitioner about his health condition to a police officer prior to his arrest; and (3) Petitioner's health intake and booking information from the jail. (State's Lodging A-2, pp. 272-73.) The motion was supported with affidavits, documents, and a brief that relied upon testimony from the preliminary hearing. (State's Lodging A-2, pp. 272-92.) The state district court set the motion for a suppression hearing and was prepared to take evidence on the motion, but Petitioner did not have any additional evidence to present beyond what was attached to his motion; he instead presented only argument at the suppression hearing. (State's Lodging A-4, pp. 7, 13-21, 39.) The motion to suppress was denied as to the Health Department records and the statements to the officer, but granted as to the jail's health intake and booking information. (State's Lodging A-2, pp. 360-61.)

      On direct appeal, Petitioner raised the suppression issue before the Idaho Supreme Court, where he filed a brief, a reply, and an amended reply. (State's Lodgings B-1, B-3,

**MEMORANDUM DECISION AND ORDER - 4**

and B-5.) The law and the facts were well-briefed. (*Id*.) The Idaho Supreme Court held oral argument on the suppression issue. (See State's Lodging B-6.) The Idaho Supreme Court fully considered and extensively addressed the suppression issue under the United States Constitution, the Idaho Constitution, federal case law, state case law, state statutes, state regulations, federal statutes, and federal regulations. After a full review of the issue, the Idaho Supreme concluded that Petitioner's Fourth Amendment rights were not violated, and that, if another legal provision, such as HIPAA,[1] had been violated, suppression was "not the proper remedy." (State's Lodging B-6, p.13.)

### C.   *Analysis*

Respondent argues that all of the foregoing litigation demonstrates that Petitioner received a full and fair opportunity to litigate his issue in the state courts. Respondent also argues that Petitioner has not borne the burden of showing that the Idaho courts did not give his Fourth Amendment issue full and fair consideration.

After reviewing the state court record and considering the parties' arguments on the Fourth Amendment issue, the Court concludes that the state court proceedings were adequate to provide Petitioner with a full and fair opportunity to litigate his claim at both the initial and appellate levels of the state court system. Petitioner was provided with a suppression hearing. He was given an opportunity to present additional evidence at that hearing. Petitioner declined the invitation to present any further evidence, likely because

---

[1] The Health Insurance Portability and Accountability Act of 1996 (HIPAA), 42 U.S.C. § 1320, *et seq.*

**MEMORANDUM DECISION AND ORDER - 5**

the facts were not at issue, but only the legal question of whether the medical records could be used at trial because of the way they were obtained. The Idaho Supreme Court heard oral argument and reviewed the suppression issues very carefully. Hence, under *Stone v. Powell*, no further litigation on the Fourth Amendment can occur in this Court.

Petitioner's reliance on the Fourteenth Amendment as an alternative basis for his Fourth Amendment claim does not permit him to avoid the *Stone v. Powell* rule (Dkt. 3, p. 2), as the United States Supreme Court has instructed federal district courts to analyze constitutional claims using an "explicit textual source of constitutional protection," such as the Fourth Amendment, rather than using "the more generalized notion of 'substantive due process'" under the Fourteenth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989) (civil rights context); *see Herrera v. Kelly*, 667 F. Supp. 963, 970 (E.D. N.Y. 1987) (petitioner not entitled to "avoid running into the brick wall of *Stone v. Powell*" by re-casting what is clearly a Fourth Amendment claim into a Fourteenth Amendment claim).

For all of the foregoing reasons, this claim will be dismissed with prejudice.

**MEMORANDUM DECISION AND ORDER - 6**

3.    **Claims Two, Three, Four, and Seven**

Respondent asserts that Claims Two, Three, Four, and Seven are procedurally defaulted.

   A.    *Standard of Law Governing Procedural Default*

Habeas corpus law requires that a petitioner "exhaust" his state court remedies before pursuing a claim in a federal habeas corpus petition. 28 U.S.C. § 2254(b). To exhaust a claim, a habeas petitioner must fairly present it to the highest state court for review in the manner prescribed by state law. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Unless a petitioner has exhausted his state court remedies relative to a particular claim, a federal district court may deny the claim on its merits, but it cannot otherwise grant relief on unexhausted claims. 28 U.S.C. § 2254(b). The petitioner can satisfy the exhaustion requirement by showing that (1) he has "fairly presented" his federal claim to the highest state court with jurisdiction to consider it (proper exhaustion), or (2) that he did not present the claim properly to the highest state court, but no state court remedy is available when he arrives in federal court (improper exhaustion). *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996) (citations omitted).

To exhaust a habeas claim properly, a habeas petitioner must "invok[e] one complete round of the State's established appellate review process," *O'Sullivan v. Boerckel*, 526 U.S. at 845, giving the state courts a full and fair opportunity to correct the alleged constitutional error at each level of appellate review. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004). Improperly exhausted claims are deemed "procedurally defaulted."

**MEMORANDUM DECISION AND ORDER - 7**

Procedurally defaulted claims include those within the following circumstances: (1) when a petitioner has *completely failed* to raise a particular claim before the Idaho courts; (2) when a petitioner has raised a claim, but has failed to fully and fairly present it as a *federal* claim to the Idaho courts; or (3) when the Idaho courts have rejected a claim on an independent and adequate state procedural ground. *See Martinez v. Klauser*, 266 F.3d 1091, 1093-94 (9th Cir. 2001) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)). Under these circumstances, the claim is considered "procedurally defaulted" for habeas corpus purposes. *See Coleman v. Thompson*, 501 U.S. 722, 731 (1991).

    **B.**    ***Discussion of Claim Two***

Claim Two is that Petitioner's Fourteenth Amendment due process rights were violated when he was not provided with an interpreter during state court proceedings, because his native language is Zulu, not English. (Dkt. 3, pp. 2-3.) Petitioner raised this claim in his first post-conviction petition. After reviewing Petitioner's arraignment testimony, listening to Petitioner testify at the post-conviction hearing, and considering the testimony of Petitioner's trial counsel regarding assessment of Petitioner's ability to communicate with him, the state district court concluded that there was no question that Petitioner understood English and that an interpreter was not necessary. (State's Lodgings C-11, pp. 216-20; C-13, pp. 1-82.) Petitioner did not include the interpreter claim in his appeal, which was heard by the Idaho Court of Appeals; nor was it included in his petition for review and briefing before the Idaho Supreme Court. (State's Lodging D-3, D-7, D-8.)

**MEMORANDUM DECISION AND ORDER - 8**

In his successive post-conviction petition, Petitioner raised a similar claim that his trial counsel was ineffective for failure to use an interpreter at trial. To meet the threshold for filing a successive petition, Petitioner also asserted that his post-conviction counsel was ineffective for not raising the claim in the first post-conviction proceeding. (State's Lodging E-1, p. 50.) The trial court denied the claim in the successive proceeding because Petitioner's post-conviction counsel *did* raise and pursue the underlying English language claim, which was without merit. (*Id*., p. 181.) Petitioner did not include the issue in his successive post-conviction appeal, but brought other issues instead. (State's Lodging F-2, F-6.)

Because the claim was not included in either post-conviction appeal, it is procedurally defaulted.

**C.    *Discussion of Claim Three***

Claim Three is that Petitioner's rights under the Fourth Amendment and under the Confrontation Clause of the Sixth Amendment were violated as a result of the following events:

> The State used illegally-obtained evidence and testimony when a requested blood test would invalidate the Petitioner's conviction. Petitioner's alleged "confession" of his HIV status was also illegally obtained and used.... Petitioner was "railroaded" by North Central Health District when he filled out blank forms that were filled in after he signed them and used as evidence by the State against him.

(Petition, Dkt. 3 p. 3.)

**MEMORANDUM DECISION AND ORDER - 9**

The only Confrontation Clause claim presented in the state courts was on direct appeal, and the claim was based on whether the district court erred in admitting the laboratory results of Mr. Mubita's HIV test without permitting cross-examination of the lab technicians. (State's Lodging B-1, pp. 229-30.) That subject is encompassed by Claim Six, which is not the subject of Respondent's Motion for Partial Summary Dismissal and which will be heard on the merits later in this proceeding.

Because Petitioner raised no other Confrontation Clause claim based on any other set of facts in his appeal, Claim Three is procedurally defaulted. To the extent that Claim Three is based upon state law grounds, such as improper evidentiary rulings, it is not cognizable in a habeas corpus proceeding. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)("Federal habeas corpus relief does not lie for errors of state law.") To the extent that Claim Three is based upon the Fourth Amendment, it is encompassed by Claim One and is precluded by *Stone v. Powell*, as discussed above.

### D.   *Discussion of Claim Four*

Claim Four is that Petitioner was not permitted to testify at trial. Petitioner raised this claim in his successive post-conviction petition. (State's Lodging E-1.) He also raised it before the Idaho Court of Appeals. (State's Lodging F-2, p. 2.) However, the Idaho Court of Appeals determined that the claim should have been raised on direct appeal (if presented as a claim that the trial court erred) under Idaho Code § 9-4901(b) or in the first post-conviction petition (if presented as an effective assistance of counsel claim). (State's Lodging F-5, pp. 6-8.)

**MEMORANDUM DECISION AND ORDER - 10**

As a result, the Court of Appeals concluded that the claim was barred in the successive post-conviction action, because Petitioner could not show that his initial post-conviction counsel was ineffective for failing to raise it in the first action. The court reasoned: "Mubita's conclusory statement that post-conviction counsel was negligent does not suffice because Mubita makes no assertion that he requested post-conviction counsel to raise the issue of Mubita's right to testify or that post-conviction counsel's failure to raise the issue was of no fault of Mubita." (State's Lodging F-5, p. 8.)

Respondent argues that, even if the Idaho Court of Appeals also suggested that the claim had no merit, the Court of Appeals relied upon the procedural bar as an adequate and independent ground for rejecting this claim. The Court agrees. The Idaho Court of Appeals's conclusion leaves no room for doubt that the claim was procedurally barred: "We conclude Mubita failed to establish a sufficient reason to raise the issue of his right to testify in a successive petition. Consequently, the issue is forfeited because it was not brought on direct appeal." (*Id*., p. 11.) Therefore, Claim Four is procedurally defaulted.

### E.    *Discussion of Claim Seven*

Claim Seven is that the jury was biased because of media coverage and Petitioner's race. (Dkt. 3, p. 6.) Petitioner filed a motion for change of venue, which contained numerous attachments. (State's Lodging A-1, pp. 180-270.) The trial court held a hearing on the motion, and afterward denied the motion without prejudice. (State's Lodging A-2, pp. 358-59; A-4, pp. 39-40.)

**MEMORANDUM DECISION AND ORDER - 11**

Petitioner did not raise this claim before the Idaho Court of Appeals or the Idaho Supreme Court on direct appeal, post-conviction review, or successive post-conviction review. Because there is no state court avenue of relief remaining open, the claim is procedurally defaulted.

### F.    *Conclusion of Procedural Default Analysis*

Claim One is subject to dismissal with prejudice on *Stone v. Powell* grounds. Claims Two, Three, Four, and Seven appear subject to dismissal with prejudice on procedural grounds. Petitioner may proceed to the merits of Claim Five and Six.

Petitioner did not present a cause and prejudice or miscarriage of justice argument to excuse the default of Claims Two, Three, Four and Seven, but, instead, in his Sur-Reply, he asserted that any type of exhaustion–proper or improper–should serve to open the procedural gateway to have his claims heard in federal court, which is a misconception. Petitioner also addressed the merits of his claims in his Response and Sur-Reply, but the merits are not at issue until the procedural questions are resolved. The Court will provide Petitioner with an opportunity to make a cause and prejudice and/or miscarriage of justice argument if he wishes to submit a motion and memorandum to address cause and prejudice or a miscarriage of justice for only the procedurally defaulted claims (Two, Three, Four, and Seven). The standards of law for these showings are addressed below.

## 4.    Cause and Prejudice

If a petitioner's claim is procedurally defaulted, a federal district court cannot hear the merits of the claim unless a petitioner meets one of two exceptions: a showing of adequate legal cause for the default and prejudice arising from the default, *see Coleman v. Thompson*, 501 U.S. 722, 731 (1991), or a showing of actual innocence, which means that a miscarriage of justice will occur if the claim is not heard in federal court. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To show "prejudice," a petitioner bears "the burden of showing not merely that the errors [in his proceeding] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982). This "cause and actual prejudice" test, more often termed simply "cause and prejudice," was adopted and clarified as a grounds for excusing procedural default in 1991 in *Coleman v. Thompson.* 501 U.S. at 745.

Several cases have clarified whether and how to apply the cause and prejudice test in various factual circumstances. For example, if a petitioner points to an instance of ineffective assistance of counsel during direct appeal that prevented the petitioner from properly exhausting his claims, he cannot rely on that instance unless he has first exhausted that particular ineffective assistance of counsel claim. If a petitioner has not

exhausted an ineffective assistance of direct appeal counsel claim, then he cannot rely on such a claim for "cause" in a "cause and prejudice" argument. *See Edwards v. Carpenter*, 529 U.S. 446 (2000) (ineffective assistance of direct appeal counsel cannot serve as cause for the default of another claim unless the ineffective assistance of counsel claim is not itself procedurally defaulted or cause and prejudice for the default of the ineffective assistance claim can be shown).

A petitioner does not have a federal constitutional right to effective assistance of counsel during state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993). As a result, the general rule is that any errors of his counsel during the post-conviction action cannot serve as a basis for cause to excuse Petitioner's procedural default of his claims. *See Coleman*, 501 U.S. at 752.

The holding of *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), established a limited exception to the *Coleman* rule–that inadequate assistance of post-conviction review (PCR) counsel or lack of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id*. at 1315.[2]

---

[2] *Martinez* applies only if the ineffective assistance of counsel claim is exhausted (no further avenue of state court relief is available) and procedurally defaulted (an adequate and independent state procedural ground for the default exists). If the new claim is unexhausted and not procedurally defaulted, then the petitioner may be able to return to state court to assert the claim under the stay-and-abey procedure. *See Rhines v. Weber*, 544 U.S. 269 (2005).

**MEMORANDUM DECISION AND ORDER - 14**

The *Martinez* exception applies only to the ineffectiveness of PCR counsel in the initial post-conviction review proceeding. It "does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial." 132 S.Ct. at 1320. Rather, *Martinez*, is singularly concerned that, if ineffective assistance of trial counsel (IATC) claims were not brought in the collateral proceeding which provided the first occasion to raise such claims, the effect was that the claims could not be brought *at all. See* 132 S.Ct. at 1316. Therefore, a petitioner may not use as cause attorney error that occurred in "appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." 132 S.Ct. at 3120.

In *Trevino v. Thaler*, 133 S.Ct. 1911 (2013), the United States Supreme Court described the *Martinez* test as consisting of four requirements or prongs:

> We consequently read *Coleman* as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."

133 S.Ct. at 1918 (citing *Martinez*, 132 S.Ct. at 1318–19, 1320–21).

Thus, as a necessary first prong for the *Martinez* exception to apply, a petitioner must bring forward some facts demonstrating that his ineffective assistance of trial counsel claim is substantial. The United States Supreme Court has defined "substantial"

**MEMORANDUM DECISION AND ORDER - 15**

as a claim that "has some merit." *Martinez*, 132 S.Ct. at 1318 (comparing the standard for certificates of appealability from *Miller–El v. Cockrell*, 537 U.S. 322 (2003)). Stated inversely, a claim is "*in*substantial" if "it does not have any merit or . . . is wholly without factual support." *Id.* at 1319.

Determining whether a claim is substantial requires a federal district court to examine both prongs of an IATC claim under *Strickland v. Washington*, 466 U.S. 668 (1984)–deficient performance and prejudice. As to deficient performance, *Strickland* emphasizes that there is a strong presumption that a trial attorney performed within the wide range of professional competence; the attorney's performance will be deemed deficient only if it fell below an objective standard of reasonableness measured under prevailing professional norms. *Strickland*, 466 U.S. at 689-90.

Prejudice under *Strickland* means that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one "sufficient to undermine confidence in the outcome." *Id*.

These standards from *Strickland* for determining deficient performance and prejudice, are, of course, the standards for an eventual review of the merits of the IATC claim. The first *Martinez* prong is not the same as a merits review, but, as the *Martinez* Court explained, it is more akin to a preliminary review of a *Strickland* claim for purposes of determining whether a certificate of appealability should issue. *See Martinez*, 132 S.Ct. at 1318-19 (comparing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)). Therefore, a court

**MEMORANDUM DECISION AND ORDER - 16**

may conclude that a claim is substantial when a petitioner has shown that "resolution" of the merits of the *Strickland* claim would be "debatable among jurists of reason," or that the issues presented are "adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (internal citation and punctuation omitted). Thus, the first prong of *Martinez* requires the district court to *review* but not *determine* whether trial counsel's acts or omissions resulted in deficient performance and in a reasonable probability of prejudice, and to *determine* only whether resolution of the merits of the claim would be debatable among jurists of reason and whether the issues are deserving enough to encourage further pursuit of them.

A second necessary prong of *Martinez* is a showing that petitioner had no counsel on initial PCR review, or that PCR counsel was "ineffective under the standards of *Strickland*." 132 S.Ct. at 1318; *see Trevino*, 133 S.Ct. at 1918. "Ineffectiveness" is a term defined by *Strickland* as deficient performance and a reasonable probability of prejudice caused by the deficient performance. 466 U.S. at 694, 700.

As to deficient performance, not just any error or omission of PCR counsel will be deemed "deficient performance" that will satisfy *Martinez;* if the PCR "attorney in the initial-review collateral proceeding did not perform below constitutional standards," the PCR attorney's performance does not constitute "cause." 132 S.Ct. at 1319. The *Strickland* standards for analyzing deficient performance set forth above apply with equal force to PCR counsel.

**MEMORANDUM DECISION AND ORDER - 17**

As to prejudice, in *Detrich v. Ryan*, – F.3d –, 2013 WL 4712729 (9th Cir. 2013)

(en banc) (plurality opinion), a plurality of judges concluded: "A prisoner need not show

actual prejudice resulting from his PCR counsel's deficient performance, over and above

his required showing that the trial-counsel IAC claim be 'substantial' under the first

*Martinez* requirement." *Id*. at *6. That set of judges reasoned:

> If a prisoner who had PCR counsel were required to show prejudice, in the ordinary *Strickland* sense, resulting from his PCR counsel's deficient performance in order to satisfy the second *Martinez* requirement, the prisoner would have to show, as a condition for excusing his procedural default of a claim, that he would succeed on the merits of that same claim. But if a prisoner were required to show that the defaulted trial-counsel IAC claims fully satisfied Strickland in order to satisfy the second *Martinez* requirement, this would render superfluous the first *Martinez* requirement of showing that the underlying *Strickland* claims were "substantial"—that is, that they merely had "some merit." *See Martinez*, 132 S.Ct. at 1318–19.

*Id*.

**MEMORANDUM DECISION AND ORDER - 18**

### B.     *Analysis of Applicability of Martinez - Claim Two*

Because the *Martinez* exception applies *only* to ineffective assistance of trial claims, the only defaulted claim for which it might apply is Claim Two, if it is liberally construed as a claim that trial counsel was ineffective for failing to obtain an interpreter (as the Idaho Court of Appeals construed it). After a thorough review of the record, the Court concludes that Petitioner is unable to show that Claim Two is substantial or that his PCR counsel performed deficiently.

The state district court rejected Petitioner's attempt to present an IATC claim regarding failure to obtain an interpreter in Petitioner's successive PCR action because Petitioner failed to show that his PCR counsel was ineffective in the first proceeding for not bringing the claim. Instead, the state district court pointed out the fact that PCR counsel had used the same facts to bring a claim that the court had failed to provide an interpreter for Petitioner at trial. (State's Lodging C-1, p. 181). That claim was rejected on the merits in the first post-conviction action based upon a clear record that Petitioner did in fact speak and understand English at the time of trial; therefore, an IATC claim based on those same facts also would have been deemed without merit.

Accordingly, PCR counsel did not perform deficiently when he did not bring a companion ineffective assistance of trial counsel claim,[3] *nor* did Petitioner suffer any

---

[3] The Court need not resolve whether the state court's determination in the successive PCR petition that initial PCR counsel was not ineffective has a res judicata effect here, because Petitioner's claim is clearly without merit.

**MEMORANDUM DECISION AND ORDER - 19**

prejudice. Therefore, Petitioner cannot meet the *Martinez* first prong (substantiality of the claim) or the second prong (deficient performance).

By the same token, even if Petitioner could provide some basis for "cause" under *Coleman v. Thompson* other than the ineffective assistance of post-conviction counsel, Petitioner still cannot show prejudice to excuse the default of Claim Two, because the state court record clearly reflects that Petitioner did not need an interpreter because he spoke and understood English at the time of trial.

Claims Four or Seven of the Petition for Writ of Habeas Corpus are not framed as ineffective assistance of trial counsel claims, and, thus, *Martinez* is inapplicable to them. Petitioner is free to assert another factual basis to serve as "cause" in the *Coleman v. Thompson* "cause and prejudice" exception to excuse the default of these claims. In other words, as grounds for "cause," Petitioner **should very simply state the factual reasons why he did not bring these claims on appeal**, focusing on a showing that some objective factor external to his defense prevented him from bringing the claims on appeal. *See Murray v. Carrier*, 477 U.S. at 488.

## 6.      Standard of Law for Showing Actual Innocence

If a petitioner cannot show cause and prejudice for his procedural default, he can still bring the claim in a federal habeas petition if he demonstrates that failure to consider the claim will result in a "fundamental miscarriage of justice," which means that a constitutional violation has probably resulted in the conviction of someone who is

**MEMORANDUM DECISION AND ORDER - 20**

actually innocent. *Murray v. Carrier*, 477 U.S. at 496. To satisfy this standard, a petitioner must make a colorable showing of factual innocence. *Herrera v. Collins*, 506 U.S. 390, 404 (1993). If a petitioner brings forward new evidence not presented at trial which tends to show his innocence, the Court must then determine whether, "in light of the new evidence, no juror, acting reasonably, would have voted to find [the defendant] guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. at 329. However, "actual innocence" requires that one make a colorable showing that he is factually, not merely legally, innocent of the charges. *Herrera v. Collins*, 506 U.S. 390, 404 (1993).

Types of evidence "which may establish factual innocence include credible declarations of guilt by another, *see Sawyer v. Whitley*, 505 U.S. 333, 340 (1992), trustworthy eyewitness accounts, *see Schlup*, 513 U.S. at 331, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996).

If Petitioner chooses to make an actual innocence argument, he must bring forward **new evidence not presented at trial**, and he must not simply argue that the evidence presented at trial was misconstrued, erroneous, or inadmissible.

## ORDER

**IT IS ORDERED:**

1.    Respondent's Motion for Partial Summary Dismissal (Dkt. 29) is

      GRANTED in part: Claim One is dismissed with prejudice, and any state

      law issues or Fourth Amendment issues raised in Claim Three are dismissed

**MEMORANDUM DECISION AND ORDER - 21**

with prejudice. Petitioner shall **not** submit any further briefing on these claims or issues.

2.  Respondent's Motion for Partial Summary Dismissal (Dkt. 29) is CONDITIONALLY GRANTED in part: Claims Two, Four and Seven will be dismissed with prejudice unless Petitioner can show that the cause and prejudice or miscarriage of justice exceptions should be applied to permit the Court to hear his claims. Within the next 30 days, Petitioner may file a motion and memorandum asking the Court to apply one or both exceptions to the defaulted claims. The page limit for this combined filing is **15 pages**.

4.  Petitioner's Motion to Show Cause Why Respondent Has Not Filed an Answer (Dkt. 31) IS DENIED. No answer is required until after the Motion for Partial Summary Dismissal has been decided, pursuant to the Court's Order of October 4, 2012, which authorized an "answer" or "pre-answer motion." (Dkt. 25, p. 2.)

5.  Respondent shall file an answer to the remaining claims **within 90 days** after entry of this Order. The answer should also contain a brief setting forth the factual and legal basis of grounds for dismissal and/or denial of the remaining claim. Petitioner shall file a reply (formerly called a traverse), containing a brief rebutting Respondent's answer and brief, which shall be filed and served **within 30 days** after service of the answer. Respondent has

**MEMORANDUM DECISION AND ORDER - 22**

the option of filing a sur-reply **within 14 days** after service of the reply. At that point, the case shall be deemed ready for a final decision.

6.      No party shall file supplemental responses, replies, affidavits or other documents not expressly authorized by the Local Rules without first obtaining leave of Court.

7.      No discovery shall be undertaken in this matter unless a party obtains prior leave of Court, pursuant to Rule 6 of the Rules Governing Section 2254 Cases.

DATED:  **September 28, 2013**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 23**