UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

KANAY MUBITA,

　　　　　　　Petitioner,

vs.

RANDY BLADES,

　　　　　　　Respondent.

Case No. 1:08-cv-00310-BLW

**MEMORANDUM DECISION
AND ORDER**

　　　　Earlier in this habeas corpus matter, the Court issued an Order dismissing Claim
One, all Fourth Amendment issues raised in Claim Three, and all state law claims. (Dkt.
39.) Petitioner was permitted to proceed to the merits of Claims Five and Six. The Court
ordered Respondent to file an answer to the Petition for Writ of Habeas Corpus, and
ordered Petitioner to present any cause and prejudice or miscarriage of justice arguments
as to his procedurally defaulted claims (Two, Three, Four, and Seven). Now pending
before the Court are Petitioner's Motion to Apply One or Both Exceptions to the
Defaulted Claims, and Petitioner's Motion to Reconsider His Motion for Appointment of
Counsel. (Dkt. 40, 50.) The merits of Claims Five and Six are ripe for adjudication. (Dkt.
3, 46, 48.)

**MEMORANDUM DECISION AND ORDER - 1**

Having reviewed the record in this matter, including the state court record, the Court concludes that oral argument is unnecessary. Accordingly, the Court enters the following Order.

## BACKGROUND

The Idaho Supreme Court heard Mubita's case on direct appeal and found the following facts:

> Kanay Mubita immigrated to the United States from Zambia, Africa, and relocated in Moscow, Idaho. As part of an immigration physical, Dr. Larry Dean Harries executed an Immigration and Naturalization Service (INS) form on April 30, 2001, indicating that Mubita tested negative for the HIV antibody. Dr. Harries conducted this examination as part of a three-part examination, the results of which were to be forwarded in a sealed envelope to the INS. Pursuant to the INS procedure, Dr. Harries sent the results in the sealed envelope to Mubita. The instructions included with the forms direct that the patient keep the envelope sealed and forward it directly to the INS. Dr. Harries testified at trial that he never directly informed Mubita his test results were negative for the HIV antibody.[1]

> On December 26, 2001, Mubita accompanied his then-wife to a hospital in Pullman, Washington, and submitted to another HIV test. This test came back with a positive result. Dr. Timothy Moody informed Mubita of these results by telephone and arranged a second test to determine the progression of the virus. In January 2002, Mubita submitted to the follow-up test, which also produced a positive result for the HIV antibodies. Dr. Moody reported Mubita's positive HIV test results to the Whitman County (Washington) Public Health Department.

> Following these test results, Mubita requested services from the North Central District Health Department (Health Department) in Moscow, Idaho, and began receiving HIV-related services. In order to receive these services, Mubita had to show he was in fact HIV positive. The first face-to-face meeting between Mubita and his caseworker, Jenny Ruppel, occurred

---

[1] Dr. Harries testified at trial that he made a mistake in reading the lab results. Dr. Harries mistakenly believed a test for Chlamydia and Gonorrhea was an HIV test, which mistake was not discovered until the time of trial. In fact, there was no HIV tests conducted at the time.

**MEMORANDUM DECISION AND ORDER - 2**

on January 17, 2002.[2] As part of the intake process, Mubita executed a number of documents in January and February 2002, certifying his HIV positive status, including a Ryan White Care Act Intake Form, and a Ryan White Title II Care Act Client Rights and Responsibilities form. The latter form indicates that a participant has the right to have information released only in the following circumstances: (a) when the participant signs a written release of information, (b) when there is a medical emergency, (c) when there is a clear and immediate danger to the participant or others, (d) when there is possible child or elder abuse, or (e) when ordered by a court of law. Mubita also signed a document containing the text of I.C. § 39-608 and stating that he had read and understood the law. Mubita executed a series of recertification forms, dated January 25, 2003, February 25, 2004, and January 11, 2005, all of which certify his HIV positive status. The record also contains an Authorization to Coordinate Services, executed by Mubita on July 30, 2002. This document provides, "[t]his authorization does not permit the release of any client records or files without my expressed written consent."

As part of the Health Department's HIV-related services, Ruppel helped Mubita gain financial assistance for transportation, housing, rental assistance and food. In addition, Ruppel helped Mubita set up doctor visits and obtain prescriptions. Specifically, Ruppel accompanied Mubita to see a doctor on May 11, 2005, and to consult a specialist in November 2005. Both doctors prescribed HIV medications for Mubita. Ruppel discussed the purpose, use, and function of these medications with Mubita. Ruppel testified at trial that she had had numerous discussions with Mubita regarding his HIV status during the time he utilized Health Department Services. She testified that Mubita never said, or acted like, he didn't have HIV.

In early October 2005, someone notified the Latah County Prosecutor's Office that "a Moscow male who is HIV positive was believed to have had sexual activity with two women without informing them of his status." In response to this information, the prosecutor's office sent a letter to the Health Department, requesting disclosure of "whatever information your agency may possess in regard to an adult male resident of Latah County who has tested positive for the HIV virus and who is believed to have engaged in sexual activity with two females in violation of Idaho Code 39-608 . . ." The letter indicated the request was made for "the purposes of a law enforcement investigation into whether a violation of I.C.

---

[2] The alleged sexual contacts, upon which the charges against Mubita are based, began in March 2002 and continued through December 2005.

**MEMORANDUM DECISION AND ORDER - 3**

§ 39-608 had occurred." In addition, the prosecuting attorney requested whatever information the agency possessed regarding the identification of potential victims. The Health Department responded on October 17, 2005, attaching the documents at issue here.[3] The prosecutor's office forwarded the information to the Moscow Police Department on December 5.

After receiving the information from the prosecutor's office, police officers contacted Mubita by telephone and asked him to come in for an interview. Mubita voluntarily went to the police station to talk with the officers on December 6, 2006. At the station, the officers informed Mubita that he was not under arrest and was free to leave at any time.

During the interview, Mubita denied receiving any paperwork demonstrating his HIV positive status. Mubita admitted that he knew T.A., one of the suspected victims, and that he had had unprotected sexual intercourse with her. In addition, Mubita stated he believed her child was his. Mubita initially denied knowing another victim, E.C., but later admitted to knowing her through T.A. Mubita denied having sexual intercourse with E.C., stating that he only had sexual relations with T.A. and his wife. While watching the interview on a closed-circuit television system, Detective Kwiatkowski phoned the director of the Health Department to inquire about Mubita's HIV status. At the interview, after Kwiatkowski showed him the documents from the Health Department, Mubita admitted to signing the documents. However, Mubita continued to deny having knowledge of his HIV status, stating that he was never given copies of the documents.

On December 7, Mubita called Ruppel. During the conversation, Ruppel became concerned for his well-being, and contacted the Moscow Police Department to request that it perform a welfare check. Kwiatkowski received the call and asked Ruppel whether Mubita was HIV positive and whether he knew of his HIV status prior to September 2004. Ruppel said he was HIV positive, that he had been told so numerous times, and that he had been receiving financial aid as a direct result of his HIV status. Three officers, one in uniform, went to Mubita's home to perform the welfare check after receiving the phone call from Ruppel. The officers knocked on the door and asked Mubita if they could come inside and talk. Mubita let them in the house. Kwiatkowski told Mubita he had spoken with Ruppel and that she was worried about his well-being. Mubita did not appear to be

---

[3]     The request was made pursuant to 45 C.F.R. 164.512(f)(1)(ii)(C), providing for lawful disclosure of otherwise private health information of an individual for law enforcement purposes upon an "administrative request."

**MEMORANDUM DECISION AND ORDER - 4**

upset. Kwiatkowski informed Mubita he had talked to Ruppel about his HIV status, and asked whether he knew he was HIV positive. Mubita responded that he knew he was HIV positive. Based on the interview the night before, wherein he disclosed having unprotected sex with T.A., and the information from Ruppel, Kwiatkowski placed Mubita under arrest.

The police department subsequently issued a press release regarding the arrest, asking people who may have had sexual contact with Mubita to contact the department. The police department interviewed 13 potential victims from December 9 through December 30, 2005.

(State's Lodging B-6, pp. 2-5.)

Petitioner was charged with and convicted by jury of eleven felony counts of transfer of bodily fluid which may contain the human immunodeficiency virus (HIV), in violation of Idaho Code § 39-608. The Honorable John R. Stegner, Second Judicial District Court for the State of Idaho, County of Latah, presided over Petitioner's action. (State's Lodging A-2, pp. 451-65.) The judgment of conviction was entered on June 6, 2006.

Petitioner's convictions were affirmed by the Idaho Supreme Court. (*Id.*) Petitioner filed a petition for post-conviction relief and a successive post-conviction petition in the state court; he obtained no relief from either petition. (State's Lodgings C-11, pp. 4-10; E-1, pp. 49-53.)

## RECONSIDERATION OF MOTION FOR APPOINTMENT OF COUNSEL

The Court first considers Petitioner's request to reconsider appointment of counsel for him. (Dkt. 50.) There is no constitutional right to counsel in a habeas corpus action. *Coleman v. Thompson,* 501 U.S. 722, 755 (1991). A habeas petitioner has a right to counsel, as provided by rule, if counsel is necessary for effective discovery or if an

**MEMORANDUM DECISION AND ORDER - 5**

evidentiary hearing is required in his case. *See* Rules 6(a) & 8(c) of the Rules Governing Section 2254 Cases. In addition, the Court may exercise its discretion to appoint counsel for an indigent petitioner in any case where required by the interests of justice. 28 U.S.C. § 2254(h); 18 U.S.C. § 3006A(a)(2)(B). Whether counsel should be appointed turns on a petitioner's ability to articulate his claims in light of the complexity of the legal issues and his likelihood of success on the merits. *See Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983).

The standard of law for prevailing on a federal habeas corpus petition is extremely difficult to meet. To date, Petitioner has adequately presented his claims and protected his interests in this case. Presently, neither discovery nor an evidentiary hearing is needed. The Court realizes that prisoners have very limited legal knowledge and resources; however, Congress has not provided for funding for habeas corpus attorneys, except in limited circumstances, not applicable here. Petitioner has adequately brought forward the factual bases of his claims, and the Court has reviewed the state court record and researched the law independently of Respondent's characterization of the record and the law.

The Court concludes that Petitioner's claims are not particularly complex or meritorious, and that he has not met the standards for appointment of counsel. Accordingly, the motion will be denied.

**MEMORANDUM DECISION AND ORDER - 6**

**RESPONDENT'S MOTION TO SEAL STATE COURT RECORDS AND PETITIONER'S OBJECTION TO MOTION TO SEAL RECORDS**

Respondent has filed a Motion to Seal the Records contained in the State's Third Lodging to protect the confidentiality of Petitioner's medical records. (Dkt. 45.) Petitioner has filed an objection to Respondent's Motion to Seal, desiring that the records be made public. (Dkt. 46.) However, some of the medical records contain information about Petitioner's spouse, as well as photographs of minor children. Therefore, for their protection, the records will be sealed, except those that relate only to Petitioner. The Clerk of Court will be ordered to unseal Exhibits A-9, A-10, A-11, A-12, and A-19, which relate only to Petitioner.

**CLAIMS TO BE DETERMINED ON THE MERITS**

### 1. Habeas Corpus Standard of Law

Federal habeas corpus relief may be granted where a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where the petitioner challenges a state court judgment in which the petitioner's federal claims were adjudicated on the merits, then Title 28 U.S.C.§ 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), applies. Title 28 U.S.C.§ 2254(d) limits relief to instances where the state court's adjudication of the petitioner's claim:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). A federal habeas court reviews the state court's "last reasoned decision" in determining whether a petitioner is entitled to relief. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).

Where a petitioner contests the state court's legal conclusions, including application of the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests: the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court] [has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

Under the second test, to satisfy the "unreasonable application" clause of § 2254(d)(1) the petitioner must show that the state court—although it identified "the correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably applie[d] it to the facts of the particular state prisoner's case." *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 (2000). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably *applies* [Supreme Court] precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014).

**MEMORANDUM DECISION AND ORDER - 8**

A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the state court's decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535 U.S. at 694. If fairminded jurists could disagree on the correctness of the state court's decision, then relief is not warranted under § 2254(d)(1). *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). The Supreme Court emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (internal citation omitted).

Though the source of clearly established federal law must come only from the holdings of the United States Supreme Court, circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999). However, circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013).

If the state appellate court did not decide a properly-asserted federal claim, if the state court's factual findings are unreasonable under § 2254(d)(2), or if an adequate excuse for the procedural default of a claim exists, then § 2254(d)(1) does not apply, and the federal district court reviews the claim de novo. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002). In such a case, as in the pre-AEDPA era, a district court can draw from both United States Supreme Court and well as circuit precedent, limited only by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989).

**MEMORANDUM DECISION AND ORDER - 9**

Under de novo review, if the factual findings of the state court are not unreasonable, the Court must apply the presumption of correctness found in 28 U.S.C. § 2254(e)(1) to any facts found by the state courts. *Pirtle*, 313 F.3d at 1167. Contrarily, if a state court factual determination is unreasonable, or if there are no state court factual findings, the federal court is not limited by § 2254(e)(1),the federal district court may consider evidence outside the state court record, except to the extent that § 2254(e)(2) might apply. *Murray v. Schriro*, 745 F.3d 984, 1000 (9th Cir. 2014).

## 2. Claim Five

Claim Five is that Jury Instruction 20 unconstitutionally shifted the burden of persuasion and "lightened the State's burden to prove each and every element of the case beyond a reasonable doubt." (Dkt. 3, p.4.) Petitioner argues that the instruction required him to prove that his belief that he did not have HIV was reasonable, which allegedly lowered the state's burden of proof because the state was not required to establish his belief was unreasonable. (State's Lodging B-1, p.39.)

### A.  *State Court Determination*

The Idaho Supreme Court concluded that the jury instruction did not violate the United States Constitution. (State's Lodging B-6, pp. 21-22.) In this action, Respondent contends that Petitioner's claim fails under both the §2254(d)(1) standard and the de novo standard. Respondent also argues that any error was harmless.

Petitioner was accused of violating Idaho Code § 39-608(1):

Any person who exposes another in any manner with the intent to infect or, knowing that he or she is or has been afflicted with acquired immunodeficiency syndrome (AIDS), AIDS related complexes (ARC), or other manifestations of human immunodeficiency virus (HIV) infection, transfers or attempts to transfer any of his or her body fluid, body tissue or organs to another person is guilty of a felony and shall be punished by imprisonment in the state prison for a period not to exceed fifteen (15) years, by fine not in excess of five thousand dollars ($5,000), or by both such imprisonment and fine.

Prior to trial, Petitioner submitted the following proposed instruction, based upon

I.C. § 39-608(3)(b) and Idaho Criminal Jury Instruction 982:

The defendant cannot be guilty of Exposing Another to the HIV Virus if:

1. before the transfer of body fluid occurred,

2. The defendant had been advised by a licensed physician that the defendant was not infectious.

If you have a reasonable doubt as to whether it did occur, you must find the defendant not guilty. The state must prove beyond a reasonable doubt that this did not occur.

(State's Lodging A-2, p. 380).

However, over Petitioner's objection, the trial court modified Petitioner's

proposed instruction, instead instructing the jury as follows on the affirmative defense at

issue:

In this case, the law provides the defendant with an affirmative defense to the charges.

It is an affirmative defense to each charge of transfer or attempted transfer of body fluid that it occurred after advice from a licensed physician that the defendant was noninfectious.

In deciding upon the reasonableness of the defendant's beliefs, you should determine what an ordinary and reasonable person might have concluded

**MEMORANDUM DECISION AND ORDER - 11**

from all the facts and circumstances which the evidence shows existed at that time.

The burden is on the State to prove beyond a reasonable doubt that the defendant knew he was infectious at the time the attempted transfer of body fluid occurred. If there is a reasonable doubt whether the defendant knew he was infectious, you must find the defendant not guilty.

(State's Lodging A-1, p. 424.)

On appeal, Petitioner contended that the trial court's instruction reduced the state's burden of proof by shifting the burden of persuasion on an essential element by requiring Petitioner "to prove that his belief was reasonable." (State's Lodging B-1, pp. 38-39.)

The Idaho Supreme Court's decision was based upon clearly-established United States Supreme Court precedent and state cases grounded in the same precedent. The Idaho Supreme Court recognized that the Constitution "prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt," citing *Jackson v. Virginia*, 443 U.S. 307, 309 (1979). (State's Lodging B-6, p. 21.) Based on a state case citing *Mullaney v. Wilbur*, 421 U.S. 684 (1975), and *Morissette v. United States*, 342 U.S. 246 (1952), the Idaho Supreme Court explained, "A jury instruction that lightens the prosecution's burden of proof by omitting an element of the crime, creating a conclusive presumption as to an element, or shifting to the defendant the burden of persuasion on an essential element is . . . impermissible." (State's Lodging B-6, p. 21.)

Citing *Sandstrom v. Montana*, 442 U.S. 510, 514 (1979), the Idaho Supreme Court rejected Petitioner's challenge to Instruction 20, determining that the instruction, when read as a whole, did not shift the State's burden to prove each element of the offense beyond a reasonable doubt:

**MEMORANDUM DECISION AND ORDER - 12**

> Whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction. The instruction itself ends with a statement reminding the jury "the burden is on the State to prove beyond a reasonable doubt that the defendant knew he was infectious at the time the attempted transfer of body fluid occurred. If there is a reasonable doubt whether the defendant knew he was infectious, you must find the defendant not guilty." Looking to the words of the instructions as a whole, it is clear a reasonable juror would not have understood this to relieve the prosecution's burden to prove each element of the offense beyond a reasonable doubt.

(State's Lodging B-6, p. 21) (citation omitted). The court also determined that, even if Instruction 20 shifted the burden, it did so only as to an affirmative defense, which is constitutionally permissible. *Id*., citing *Martin v. Ohio*, 480 U.S. 228, 235-36 (1987), and *Montana v. Egelhoff*, 518 U.S. 37, 42, 56 (1996). (State's Lodging B-6, p. 22.)

### B. Clearly-Established Law

This Court begins its analysis of the constitutionality of Instruction 20 with the basic principles found in *In re Winship*, 397 U.S. 358 (1970), where the Court held that the prosecution must prove beyond a reasonable doubt "every fact necessary to constitute the crime with which [the defendant] is charged." *Id*. at 364. An instruction that shifts the burden of disproving any element of a criminal offense violates due process. *Mullaney v. Wilbur*, 421 U.S. 684, 701 (1975). In *Sandstrom v. Montana*, 442 U.S. 510 (1979), the Court held that a jury instruction stating that the law presumes a person intends the ordinary consequences of his voluntary acts was unconstitutional because the jury may have interpreted the presumption as conclusive or as shifting the burden of persuasion on intent, violating the principle of *In re Winship*. *Id*. at 520-21.

**MEMORANDUM DECISION AND ORDER - 13**

In *Patterson v. New York*, 432 U.S. 197 (1977), the Supreme Court "decline[d] to adopt as a constitutional imperative, operative countrywide, that a State must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused." *Id*. at 210. The *Patterson* Court affirmed Patterson's conviction, summarizing its reasoning as, "nothing was presumed or implied against Patterson." *Id*. at 216.

In *Martin v. Ohio*, the Court addressed affirmative defenses that are similar to the elements of a crime:

> The instructions in this case could be clearer in this respect, but when read as a whole, we think they are adequate to convey to the jury that all of the evidence, including the evidence going to self-defense, must be considered in deciding whether there was a reasonable doubt about the sufficiency of the State's proof of the elements of the crime.
>
> We are thus not moved by assertions that the elements of aggravated murder and self-defense overlap in the sense that evidence to prove the latter will often tend to negate the former. It may be that most encounters in which self-defense is claimed arise suddenly and involve no prior plan or specific purpose to take life. In those cases, evidence offered to support the defense may negate a purposeful killing by prior calculation and design, but Ohio does not shift to the defendant the burden of disproving any element of the state's case**.**

480 U.S. at 234.

The *Patterson* Court admonished that it is normally "within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion." 432 U.S. at 201. As a result, a State's decision on how to allocate the burden is "not subject to proscription under the Due Process Clause unless 'it offends some principle of justice so rooted in the traditions and

**MEMORANDUM DECISION AND ORDER - 14**

conscience of our people as to be ranked as fundamental.'" 432 U.S. at 202 (citing *Speiser v. Randall*, 357 U.S. 513, 523 (1958).)

It is well established that a jury instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). In reviewing an ambiguous instruction, the Court inquires "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. *Boyde v. California*, 494 U.S. 370, 380 (1990).

If a *Boyde* error is evident, the Court must next apply a harmless error analysis. The harmless error standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38, 113 S.Ct. 1710, 1722 (1993), requires that a defendant establish actual prejudice, or show that the constitutional violation had a substantial and injurious effect or influence on the jury's verdict. *See also Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239 (1946).

### C. Analysis

As important foundational information, the Court first notes that, *not* at issue here, are Instructions 8 through 18, requiring the State to prove all of the elements of the crime, which are presented in a list form for the jury. (State's Lodging A-2, pp. 412-22 (same instruction, repeated as to each victim).) Each instruction discusses that the State's burden is "beyond a reasonable doubt" three times. (*Id.*) In those instructions alone, the

**MEMORANDUM DECISION AND ORDER - 15**

State's burden is mentioned 33 times. A separate instruction explaining the State's burden beyond a reasonable doubt is included in Jury Instruction 5. (*Id.*, p. 407.)

The question is whether the affirmative defense instruction no. 20, viewed in light of all of the instructions, could reasonably have been construed by the jury as unconstitutionally reducing the burden of the State to prove the elements of the crime. The required mens rea element of the crime was "at the time of the transfer or attempted transfer Mubita knew he had the HIV virus in his body." (State's Lodging A-2, pp.412-22.) The statutory affirmative defense was intended to permit a defendant to use an excuse relating to his "knowledge" under the specific circumstance that a medical doctor advised him that he was noninfectious. The Court agrees with the Idaho Supreme Court that the inserted language explained the affirmative defense—what the defendant believed after receiving such advice—and did not alter the State's burden to prove beyond a reasonable doubt that the defendant knew he had the HIV virus in his body. Instruction 20's affirmative defense subparagraphs are sandwiched between the 34 prior instruction subparagraphs regarding the State's burden of proof and the last two sentences of the instruction that instruct the jury both that the State bears the burden of proof, and that any reasonable doubt whether Petitioner knew he was infectious (an element of the crime) must lead to an acquittal. This last statement, in particular, notified the jury that the burden regarding the knowledge element was not to be shifted to the defendant.

The statutory affirmative defense Petitioner relied upon merely provides a defendant with an opportunity to rebut the State's showing of knowledge; it does not require the defendant to prove that he did not know his HIV status, and it does not

**MEMORANDUM DECISION AND ORDER - 16**

provide that, in the absence of proof from the defendant, he is presumed to know his HIV status. Rather, Instruction 20 expressly clarifies that the State bears the burden on the knowledge element, and that any reasonable doubt (regardless of the source) as to the knowledge element raised by the defendant must be resolved in the defendant's favor. The nature of this particular affirmative defense is such that it "overlaps" with the element of knowledge, "in the sense that evidence to prove the latter will often tend to negate the former," but the statute also conveys the idea that *absence of such proof* does not equal a finding that the defendant had knowledge of his HIV status; rather, the State retained that burden. *See Martin*, 480 U.S. at 234.

The difference between the closely-related topics of an affirmative defenses versus an element of the crime is sometimes difficult to understand without looking at the logic behind the distinction. Where an affirmative defense is a statutorily-created benefit to defendants, the United States Supreme Court is unwilling to place the burden of persuasion on the State, as it explained in *Patterson*:

> [I]n revising its criminal code, New York provided the affirmative defense of extreme emotional disturbance, a substantially expanded version of the older heat-of-passion concept; but it was willing to do so only if the facts making out the defense were established by the defendant with sufficient certainty. The State was itself unwilling to undertake to establish the absence of those facts beyond a reasonable doubt.... It has been said that the new criminal code of New York contains some 25 affirmative defenses which exculpate or mitigate but which must be established by the defendant to be operative. The Due Process Clause, as we see it, does not put New York to the choice of abandoning those defenses or undertaking to disprove their existence in order to convict of a crime which otherwise is within its constitutional powers to sanction by substantial punishment.

**MEMORANDUM DECISION AND ORDER - 17**

432 U.S. at 207-08.[4]

Not only does the Court agree that no due process violation occurred with the trial court's issuance of Instruction 20, this Court further agrees with the trial court that, in Petitioner's particular case, the statutory affirmative defense language alone would have been confusing as a jury instruction. In Petitioner's case, the first doctor sent information to a government agency—in a sealed envelope that Petitioner was supposed to forward to the government agency in its originally-sealed form without viewing its contents—informing the agency that Petitioner was HIV-free, while two later tests—the results of which were conveyed directly to Petitioner by a second doctor and another health care provider—confirmed that Petitioner had HIV. Without the additional explanatory paragraph in Instruction 20, the statutory language alone might have led the jury to believe that they could not consider either the later test results or the direct conveyance of that information to Petitioner, leading to a nonsensical result.

The Court concludes that Petitioner has not meet the burden imposed by §2254(d)(2). The Idaho Supreme Court's decision regarding Instruction 20 was not contrary to, or an unreasonable application of, the United State Supreme Court precedent set forth above. The *Patterson* Court clarified: "Proof of the nonexistence of all

---

[4]     Similarly, one treatise explains:

> Under *Patterson* . . . the burden of persuasion for such defenses, that refine offenses by providing extra grounds for exculpation, may be constitutionally allocated to the defendant. Any other rule for these new defenses would raise a special, essentially political, problem. As others have noted, if a legislature is not free to place the burden of persuasion for a new expanded defense on the defendant, it may balk at providing the new defense. Clearly, it may be better for the defendant to carry the burden on an expanded defense, than to have no defense or a more limited defense.

Paul H. Robinson, *Criminal Law Defenses*, § 5(b)(3) (Westlaw Database, updated June 2014).

**MEMORANDUM DECISION AND ORDER - 18**

affirmative defenses has never been constitutionally required." 432 U.S. at 210. Instruction 20 did not diminish the State's burden, did not imply that an element could be omitted, did not create a presumption as to an element, and did not shift to the defendant the burden of persuasion on an essential element. It is constitutional to require a defendant to bear the burden of persuasion on an affirmative defense, and the jury instruction did not cross the line from the burden of persuasion on an affirmative defense to the burden of persuasion on an essential element. Federal habeas corpus relief is not warranted.

### 3. Claim Six

In Claim Six, Petitioner contends the admission of two lab reports (State's Lodgings A-9 and A-10), without permitting him the opportunity to confront and cross-examine those who actually performed the lab tests, violated his Sixth Amendment right of confrontation. (Dkt. 3, p.4.) On appeal, the Idaho Supreme Court determined: "[S]ince admission of the tests has been determined to be harmless error in any event, we need not address this claim." (State's Lodging B-6, p. 18 n. 16.) Because the Idaho Supreme Court did not determine that the claim was improperly brought, but that it failed on harmless error grounds, the claim may be pursued on habeas corpus review. Because this claim was determined to be meritless, it is entitled to AEDPA deference. Alternatively, the Court will consider whether the claim would warrant relief under a de novo standard of law.

During the testimony of Dr. John Moody, the state offered into evidence the lab report showing the results of the December 26, 2001, and January 9, 2002, HIV testing. (State's Lodging A-5, pp. 174-84.) Petitioner objected, because a lab technician, not Dr. Moody, had conducted the testing and prepared the report for Dr. Moody. (*Id.*, pp. 174-79.) The trial court overruled the objection and admitted the reports. The reports showed that Petitioner tested HIV positive. (State's Lodging A-9, A-10.)

The Idaho Supreme Court decided Petitioner's case on June 11, 2008. For AEDPA purposes, this Court reviews only the United States Supreme Court precedent existing prior to that date. The Court does not rely on *Giles v. California*, 554 U.S. 353 (2008), which was decided on June 28, 2008, or on *Williams v. Illinois*, 132 S.Ct. 2221 (2012), because they were not available to the Idaho Supreme Court on June 11, 2008.

The "main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska*, 415 U.S. 315-316 (1974). The Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004) (abolishing broad exceptions to the Confrontation Clause). To be subject to the Confrontation Clause, evidence must be "testimonial" and not merely hearsay. *Davis v. Washington*, 547 U.S. 813, 824-26 (2006). Testimony is that which is "ordinarily . . . designed primarily to establish or prove some past fact," while nontestimonial evidence was created for the purpose of "describ[ing] current circumstances." *Id.* at 827. For example, in *Davis*, the Court determined that a 911 call from an assault victim who

**MEMORANDUM DECISION AND ORDER - 20**

named the person who assaulted her during the call was not subject to the Confrontation Clause because, the Court explained, the call's "primary purpose was to enable police assistance to meet an ongoing emergency. She simply was not acting as a *witness*; she was not *testifying*." *Id*. at 828 (emphasis in original).

In contrast, in *Giles v. California*, 554 U.S. 353 (2008), the Court determined that a victim's recitation of past events made to a police officer who was investigating a domestic-violence report was testimonial and that admission of the statement at trial violated the defendant's right to confrontation.

In *Crawford*, the Supreme Court listed a variety of statements that generally fit within the category of "testimonial" statements: "ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially"; "extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions,"; "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial"; "ex parte testimony at a preliminary hearing"; and "[s]tatements taken by police officers in the course of interrogations." 541 U.S. at 51-52.

Respondent argues that Petitioner has failed to establish that the two HIV reports were testimonial and violated the Confrontation Clause. Respondent makes the important point that the purpose of the HIV testing could *not* have been to target Petitioner or create a record for use at a future criminal trial because he did not transmit body fluids until

*after* the testing took place. More importantly, Dr. Moody explained that it was Petitioner's partner who came to the office for testing accompanied by Petitioner because she had already tested positive for the HIV virus and wanted to confirm the result. (State's Lodging A-5, pp.174-75.) Because she did not understand how she contracted the HIV virus, Petitioner was also tested. (*Id.*, p.175.) Petitioner's second test was completed to "get an idea of the evolution of the illness." (*Id.*, pp.181-82.)

The Court agrees that the tests reports were not testimonial. They are not of the type listed in *Crawford*, and, more importantly, they were expressly made for the purpose of providing medical care to Petitioner. Therefore, admission of the test reports did not violate the Confrontation Clause. The Court further agrees, that, even if the test reports were wrongfully admitted under state law, the error was harmless, because there was other evident in the record to show that Petitioner knew that he was HIV positive at the time he had sexual relations with the victims between March 2002 and December 2005. Petitioner has not, at any time, produced medical evidence showing he was not HIV-positive during the time period in question. Therefore, Petitioner's claims fail under both a § 2254(d) review standard and a de novo harmless error review standard.

## CAUSE AND PREJUDICE AND MISCARRIAGE OF JUSTICE EXCEPTIONS

The Court previously determined that Claims Two, Three, Four, and Seven were procedurally defaulted, and the Court provided opportunity for Petitioner to brief his arguments why either the cause and prejudice exception or miscarriage of justice (actual innocence) exception should be applied to excuse the default of his claims. Petitioner filed a motion, asking the Court to apply both exceptions, and Respondent filed a

**MEMORANDUM DECISION AND ORDER - 22**

response. (Dkts. 40, 41.) For the following reasons, the Court concludes that neither exception applies.

## 1. Discussion of Claim Two

Claim Two is that Petitioner's Fourteenth Amendment due process rights were violated when he was not provided with an interpreter during state court proceedings, because his native language is Zulu, not English. (Dkt. 3, pp. 2-3.) Petitioner raised this claim in his first post-conviction petition, and the state district court held an evidentiary hearing on the claim. After reviewing Petitioner's arraignment testimony, listening to Petitioner testify at the post-conviction hearing, and considering the testimony of Petitioner's trial counsel regarding assessment of Petitioner's ability to communicate with him, the state district court concluded that there was no question that Petitioner understood English and that an interpreter was not necessary. (State's Lodgings C-11, pp. 216-20; C-13, pp. 1-82.) Petitioner did not include the interpreter claim in his appeal, which was heard by the Idaho Court of Appeals; nor was it included in his petition for review and briefing before the Idaho Supreme Court. (State's Lodging D-3, D-7, D-8.)

In his successive post-conviction petition, Petitioner raised a similar claim—that his trial counsel was ineffective for failure to use an interpreter at trial. To meet the threshold for filing a successive petition, Petitioner also asserted that his post-conviction counsel was ineffective for not raising the claim in the first post-conviction proceeding. (State's Lodging E-1, p. 50.) The trial court denied the claim in the successive proceeding because Petitioner's post-conviction counsel raised and pursued the underlying English

language claim (without the ineffective assistance overlay), which was found to be completely without merit. (*Id.*, p. 181.) Petitioner did not include the issue in his successive post-conviction appeal, but brought other issues instead. (State's Lodging F-2, F-6.)[5]

The Court now concludes that Petitioner has not shown adequate cause to excuse the default of this claim, which default occurred at the appellate level of post-conviction proceedings. Nor can he show prejudice regarding the default of this claim because the state district court thoroughly reviewed the evidence supporting the claim, including evidence presented at an evidentiary hearing, and the state court determined that Petitioner unquestionably could understand English and did not need an interpreter. This Court agrees with the conclusion of *Sharpe v. Bell*, 593 F.3d 372 (4th Cir. 2010), that state court findings of fact should be presumed correct in federal habeas corpus procedural settings: "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Id.* at 378.

For the same reasons, the Court alternatively will deny the claim on the merits. Under a de novo review standard, if the factual findings of the state court are not unreasonable, the Court must apply the presumption of correctness found in 28 U.S.C. § 2254(e)(1) to any facts found by the state courts. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002). After holding an evidentiary hearing, the state district court found that an

---

[5]      The Court previously determined that, construing Claim Two as an ineffective assistance of counsel claim, Petitioner could show neither substantiality nor deficient performance of post-conviction counsel; thus the exception set forth in *Martinez v. Ryan* 132 S.Ct. 1309 (2012), does not apply. (Dkt. 39, pp. 19-20.)

**MEMORANDUM DECISION AND ORDER - 24**

interpreter was not needed. There is insufficient evidence in the record to rebut that finding. Accordingly, this claim will be dismissed because it is procedurally defaulted, and no cause and prejudice has been shown. Alternatively, it will be denied for lack of merit.

### 2. Discussion of Claim Three

Claim Three is that Petitioner's rights under the Fourth Amendment and the Confrontation Clause of the Sixth Amendment were violated as a result of the following events:

> The State used illegally-obtained evidence and testimony when a requested blood test would invalidate the Petitioner's conviction. Petitioner's alleged "confession" of his HIV status was also illegally obtained and used.... Petitioner was "railroaded" by North Central Health District when he filled out blank forms that were filled in after he signed them and used as evidence by the State against him.

(Petition, Dkt. 3 p. 3.)

Petitioner has not made any particular cause and prejudice argument for the default of this claim. Therefore, it cannot be heard on the merits.

Even if the Court decided this claim on the merits de novo, it would not merit relief. The Confrontation Clause argument is encompassed by Claim Six, discussed above. The contested items of evidence are not "testimonial." Petitioner's blood tests, his admission of his HIV status for his receipt of welfare benefits, and his signed release forms were all created for the purpose of helping Petitioner with his health and welfare needs. Even without the documentary evidence, the testimonial evidence at trial

**MEMORANDUM DECISION AND ORDER - 25**

established Petitioner's HIV status, and Petitioner had full opportunity for cross-examination of the health care workers who treated his HIV condition.

To the extent that Claim Three is based upon state law grounds, such as improper evidentiary rulings, it is not cognizable in a habeas corpus proceeding. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("Federal habeas corpus relief does not lie for errors of state law.") To the extent that Claim Three is based upon the Fourth Amendment, it is encompassed by Claim One and is precluded by *Stone v. Powell*, as discussed in the Court's prior Order.

### 3. Discussion of Claim Four

Claim Four is that Petitioner was not permitted to testify at trial. Petitioner raised this claim in his successive post-conviction petition. (State's Lodging E-1.) He also raised it before the Idaho Court of Appeals on appeal of the dismissal of that action. (State's Lodging F-2, p. 2.) However, the Idaho Court of Appeals determined that the claim should have been raised on direct appeal (if presented as a claim that the trial court erred) under Idaho Code § 9-4901(b), or in the first post-conviction petition (if presented as an effective assistance of counsel claim). (State's Lodging F-5, pp. 6-8.)

To the extent that Petitioner asserts that his direct appeal counsel was ineffective for failing to raise this claim, such an ineffective assistance claim cannot serve as cause, because Petitioner did not properly exhaust the direct appeal counsel claim in the state courts (or show cause and prejudice for its default). *See Edwards v. Carpenter, supra.*

**MEMORANDUM DECISION AND ORDER - 26**

Even if the Court considered Petitioner's claim on the merits, it would not warrant relief. Petitioner has not shown that, had he testified, there is a substantial likelihood that the outcome of the trial would have been different. The Idaho Court of Appeals noted in its 2012 opinion: "Mubita does not allege to what he would have testified or how it would have refuted his previous admissions." (State's Lodging F-5, p. 9.) Nor does the record in this case sufficiently show the content of any proposed testimony. This claim therefore has no merit.

### 4. Discussion of Claim Seven

Claim Seven is that the jury was biased because of media coverage and Petitioner's race. (Dkt. 3, p. 6.) Petitioner filed a motion for change of venue, which contained numerous attachments. (State's Lodging A-1, pp. 180-270.) The trial court held a hearing on the motion, and afterward denied the motion without prejudice. (State's Lodgings A-2, pp. 358-59; A-4, pp. 39-40.)

The state district judge denied Petitioner's motion for a change of venue without prejudice early in the case, based on the following reasoning:

> I don't think an adequate showing has been made for me to change venue. I think to the extent that we may get into jury selection and conclude that Mr. Mubita cannot find a fair and impartial jury in Latah County, which I can't conclude on this record, we can revisit this issue. But I don't think a showing significant to have me change venue has been made.

(State's Lodging A-4, pp. 39-40.) Petitioner did not raise this claim before the Idaho Supreme Court in any of his actions.

Petitioner has not shown that his counsel renewed his motion during or after jury voir dire. More importantly, Petitioner has produced no evidence showing that, during jury selection, additional information about actual bias among Latah County jurors was revealed such that a change of venue should have been requested or granted at that time. As a result, Petitioner has not demonstrated prejudice. For the same reason, his claim fails under a de novo review on the merits.

### 5.  Miscarriage of Justice

Petitioner requests that the Court apply the miscarriage of justice exception to the procedural default rule, but he has made an insufficient showing that (1) he was not HIV positive at the time of the alleged crimes; or (2) that he did not know he was HIV positive before and at the time of the alleged crimes. Of particular significance is that Petitioner signed a form at the health clinic that informed him of the existence of I.C. § 39-608; he indicated that he was aware that he could be charged with that particular felony if he had sexual relations with other individuals. Also significant is the fact that Petitioner executed a series of recertification forms at the medical clinic, dated January 25, 2003, February 25, 2004, and January 11, 2005, all of which certify his HIV positive status (the charged acts were between March 2002 and December 2005). Petitioner also received HIV medication as a result of the clinic's efforts. The record contains ample evidence supporting Petitioner's conviction, including testimony that medical providers directly informed Petitioner of his HIV status, that Petitioner responded in a manner that indicated he understood his status, and that Petitioner sought and received many government

**MEMORANDUM DECISION AND ORDER - 28**

benefits as a result of his HIV status. Therefore, the Court concludes that the miscarriage of justice exception cannot be applied.

### 6. Conclusion

For all of the foregoing reasons, the Court concludes that federal habeas corpus relief is not warranted. Accordingly, the Petition for Writ of Habeas Corpus will be denied, and this case will be dismissed with prejudice.

### ORDER

**IT IS ORDERED:**

1. Petitioner's Motion to Reconsider Petitioner's Motion for Appointment of Counsel (Dkt. 50) is DENIED.

2. Petitioner's Motion to Apply One or Both Exceptions to the Defaulted Claims (Dkt. 40) is DENIED.

3. Respondent's Motion for Extension of Time to File Answer (Dkt. 43) is GRANTED.

4. Respondent's Motion to Seal Third Supplemental Lodging (Dkt. 45) is GRANTED in part, and DENIED in part (as a result of Petitioner's objection to the sealing). The Clerk of Court shall keep all of the records in the Third Supplemental Lodging sealed, with the exception of Exhibits A-9, A-10 A-11, A-12, and A-19; these five exhibits shall be copied, and the copies unsealed and placed in a different file from the sealed exhibits.

5.   The claims in the Petition for Writ of Habeas Corpus (Dkt. 3) are DENIED and DISMISSED with prejudice.

6.   The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: May 4, 2015

B. Lynn Winmill
Chief Judge
United States District Court